

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-22-1997

# United States v. Skandier

Precedential or Non-Precedential:

Docket
97-3129

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"United States v. Skandier" (1997). *1997 Decisions.* Paper 227.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/227

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 22, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-3129

UNITED STATES OF AMERICA

v.

JOHN P. SKANDIER,
APPELLANT

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Crim. No. 93-cr-00045E)

Submitted by the Clerk for a certificate of
appealability pursuant to 28 U.S.C. S2253
July 24, 1997

Before: BECKER, ALITO, and McKEE, Circuit Judges.
(MOTIONS PANEL A)

(Filed September 22, 1997)

JOHN PETER SKANDIER
#14458-038
Loretto FCI
P.O. Box 1000
Loretto, PA 15940

Appellant Pro se


BONNIE R. SCHLEUTER, ESQUIRE
Assistant United States Attorney
Office of the United States Attorney
633 United States Post Office &
Courthouse
Pittsburgh, PA 15219

Attorney for Appellee

OPINION OF THE COURT

BECKER, Circuit Judge.

Title 28 U.S.C. S 2253, which was enacted as Part of the
Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), in relevant part provides:

. . .

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --

> . . .

> (B) the final order in a proceeding underS 2255.

> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

Prior to AEDPA, a 28 U.S.C. S 2255 petitioner could pursue an appeal from denial of a S 2255 petition without first obtaining a certificate of appealability ("CAPP"). The motion presently before us raises the question whether, in the wake of the Supreme Court's recent decision in Lindh v. Murphy, ___ U.S. ___, 117 S.Ct. 2059 (1997), the CAPP provisions apply to an appeal taken after the effective date of the AEDPA1 from an order denying a motion under 28 U.S.C. S 2255 that was filed before that date. We hold that they do not.

_____

1. Pub. L. 104-132, 110 Stat. 1214.

I

In February 1996, John Peter Skandier moved in the District Court for the Western District of Pennsylvania to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. S 2255. In February 1997, after the district court denied his motion, Skandier filed a timely notice of appeal. This court advised Skandier that, pursuant to 28 U.S.C. S 2253(c)(1), he would have to obtain a CAPP from the court before his appeal would be entertained. Skandier then filed a CAPP request in which he claimed, inter alia, that S 2253(c) should not apply to him because his S 2255 motion was filed in the District Court before April 24, 1996, the effective date of AEDPA. By order dated May 27, 1997, a panel of this Court declined Skandier's CAPP request, reasoning that Skandier had failed to make the substantial showing of a denial of a constitutional right that is required by 28 U.S.C. S 2253(c)(2). Skandier then filed a petition for rehearing en banc, which was denied.

Before us now is Skandier's "motion for reconsideration and reinstatement," which we shall construe as a motion to recall the mandate and for reconsideration. Skandier repeats his contention that S 2253(c) does not apply to his appeal, this time citing Lindh.

II

In Lindh, the Court was presented with the question whether a portion of AEDPA dealing with state habeas corpus petitions in noncapital cases applies to petitions pending when AEDPA was passed. The Court held that it does not. The crux of the Court's analysis reaching this conclusion was a distinction between AEDPA's amendments to chapter 153 of Title 28 and the newly enacted chapter 154. According to the Court's reading of the legislative history of the Act, Congress intended to apply the amendments to chapter 153 (of which S 2253 is a part) "only to such cases as were filed after the statute's enactment (except where chapter 154 otherwise makes select provisions of chapter 153 applicable to pending cases)." Lindh, 117 S.Ct. at 2063. The amendments to chapter 153 include those amendments bearing onS 2255

3

motions. AEDPA created chapter 154 of Title 28 to deal especially with habeas corpus proceedings against a state in capital cases. See Lindh, 117 S.Ct. at 2063.

The basis for the Court's distinction between chapters 153 and 154 is its reading of S 107(c) of the Act, 110 Stat. 1226, which provides that the new chapter 154 "shall apply to cases pending on or after the date of enactment of this Act." The Court holds that since Congress "was reasonably concerned" about ensuring the retroactive application of chapter 154, it would have been "just as concerned" about the retroactive application of the chapter 153 amendments if it had desired the same result. 117 S.Ct. at 2064. In other words, by negative implication the presence of S 107(c) indicates that Congress did not intend for those amendments to chapter 153 not expressly made applicable to pending cases elsewhere in the text of AEDPA to be applied to such cases. The Court concludes: "We hold that the negative implication of S 107(c) is that the new provisions of chapter 153 generally apply only to cases filed after the Act became effective." Id. at 2068.

As additional support for its conclusion, the Court also discusses the newly enacted 28 U.S.C. S 2264(b). In brief, S 2264(b) (which is part of chapter 154) provides for the

application of S 2254(d) and (e) (which are part of chapter 153) to pending cases. The Court concludes that there would have been no need for Congress to provide expressly for the retroactive application of 2254(d) and (e) if it had intended for chapter 153 to apply generally to all cases pending when the Act took effect. See id. at 2066-68.

Although there is some disagreement over the meaning of the "generally apply" wording, see Tiedeman v. Benson, ___ F.3d. ___, 1997 WL 437181 (8th Cir. 1997), discussed infra at p. 6-8, we believe that the most plausible reading of the Court's language is that the amendments to chapter 153 should not be given retroactive effect unless expressly provided for elsewhere in the text of the Act. We believe that this reading is most consistent with the tenor and analysis of the Court's opinion in Lindh. Thus, sinceS 2253(c) is part of chapter 153, we find that that section should not apply to a S 2255 motion that was filed before AEDPA's

4

effective date. This conclusion is in accord with the clear weight of authority.

Consistent with our understanding, the Court of Appeals for the Fifth Circuit has interpreted Lindh as entailing that the certificate of appealability provisions of S 2253 may not be applied to appeals from denials of both S 2254 habeas petitions and S 2255 motions that were filed before AEDPA's effective date. Green v. Johnson, 116 F.3d 1115, 1120 (5th Cir. 1997); United States v. Carter, 117 F.3d 262, 1997 WL 374754 at *1-*2 and n.1 (5th Cir. July 8, 1997); United States v. Roberts, ___ F.3d ___, 1997 WL 420166 (5th Cir. July 24, 1997). The Court of Appeals for the Sixth Circuit has reached the same conclusion. Arrendondo v. United States, ___ F.3d ___ , 1997 WL 459716 at *1 (6th Cir. August 13, 1997)(citing Carter). Additionally, in the wake of Lindh, the First Circuit has issued an amended practice order providing that its Interim Local Rules 22.1 and 22.2 (pertaining to the processing of certificates of appealability) apply only "to the processing of non-capitalS 2254 and S 2255 petitions . . . which were filed on or after April 24, 1996." Amended Practice Order (1st Cir. July 22, 1997). See also Martin v. Bissonette, ___ F.3d ___, 1997 WL 374793 at *3 (1st Cir. July 11, 1997) (in Lindh the Supreme Court held that "AEDPA does not apply to habeas petitions which were pending at the time the new law took effect").

We also note that unpublished opinions in two other circuits reach the same result: United States v. Gonzales, 1997 WL 415334 at *1 n.1 (9th Cir. July 24, 1997) ("Because Gonzales filed his S 2255 motion prior to the

effective date of the [AEDPA], no certificate of appealability is required"); United States v. Turner, 1997 WL 431824 at *1 (10th Cir. August 1, 1997) (same, characterizing Lindh as "holding that 1996 amendments requiring a certificate of appealability in S 2255 cases do not apply to cases filed before the effective date of the amendments" even though section 2255 was not specifically addressed in Lindh). Although we would not ordinarily rely on unpublished opinions, which normally are not precedential, we view those opinions as the functional equivalent of the First Circuit's practice order, establishing the internal practice to be followed in the respective circuits with respect to the appeals from denials of S 2255 petitions.

Broad language in recent cases from other of our sister circuits involving various provisions of chapter 153 suggests that most courts agree with our interpretation of the scope of Lindh. Johnson v. Washington, ___ F.3d ___, 1997 WL 381206 at *11 n.5 (7th Cir. July 9, 1997) ("We are aware that the United States Supreme Court has recently decided that the new provisions of Chapter 153 of the [AEDPA] . . . are not applied retroactively to pending cases."); Reddick v. Haws, ___ F.3d ___, 1997 WL 409422 at *4 n.1 (7th Cir. July 22, 1997) ("Reddick's petition was filed before the [AEDPA] became law. The provisions of that act therefore do not govern our review of his claims."); Amaya-Ruiz v. Stewart, ___ F.3d ___, 1997 WL 426215 at *1 n.1 (9th Cir. July 31, 1997) ("Amaya-Ruiz filed his petition prior to the passage of the [AEDPA]. The new provisions of Chapter 153, therefore, do not govern our resolution of this appeal."); Contreras v. Schiltgen, __ F.3d __, 1997 WL 426213 at *1 (9th Cir. July 31, 1997) ("Because Contreras' petition was filed prior to April 24, 1996, this appeal is unaffected by the [AEDPA].").2

In contrast, in Tiedeman v. Benson, supra, the Court of Appeals for the Eighth Circuit addressed the similar question whether a certificate of appealability is required in an appeal from the denial of a S 2254 petition where the petition was filed before April 24, 1996, and the appeal was filed after that date. The court reached the opposite conclusion from that reached in the cases cited above, reasoning:

> Whatever changes the AEDPA has made with respect to appeals by habeas corpus petitioners are procedural only. The notice of appeal, together with Tiedeman's application for a certificate of appealability, was filed after the enactment of the AEDPA. We recognize that the Supreme Court in Lindh . . . has held that the

_____

2. Indeed, before Lindh was decided this Court had reached the same
conclusion concerning certain changes made by AEDPA with regard to
second or successive petitions. Burkett v. Love , 89 F.3d 135, 138 n.2 (3d
Cir. 1996) ("The present petition had been filed before that amendment
to S 2254 was enacted, and consequently, it does not apply here.").

6

> generally speaking, are prospective only. The particular
> provision of the law at issue in Lindh, however, had to
> do with the substantive standards for review of state
> court judgments by habeas courts. In stating its
> holding at the end of its opinion, the Court said that
> "the new provisions of Chapter 153 generally apply
> only to cases filed after the Act became effective" . . .
> (emphasis ours). The parties to this case agree that the
> new provisions with respect to certificates of
> appealability made no substantive change in the
> standards by which applications for such certificates
> are governed. Moreover, we can think of no reason why
> a new provision exclusively directed towards appeal
> procedures would depend for its effective date on the
> filing of a case in a trial court, instead of on the filing
> of a notice of appeal or similar document.

Id. at *2.

The Eighth Circuit's analysis turns on the penultimate
sentence of Lindh: "the new provisions of chapter 153
generally apply only to cases filed after the Act became
effective." 117 S.Ct. at 2068 (emphasis added). From this
use of "generally" the Tiedeman court determines that the
Supreme Court meant to say that not all provisions of
Chapter 153 apply only prospectively, and, we infer, that
typical rules of statutory construction (e.g. distinguishing
between substantive and procedural amendments) should
apply to reach the conclusion that S 2253(c) should have
retroactive application. See, e.g., Landgraf v. USI Film
Products, 511 U.S. 244 (1994)(setting forth default rules of
construction with regard to retroactive application).

We disagree. The essential message of Lindh, we believe,
is that we need not resort to a Landgraf analysis with its
default rules of retroactive/prospective application when
the intent of Congress is clear and no Constitutional
violation would be worked by applying the statute as
Congress intended. The Tiedeman court's reading of the
"generally apply" language as permitting application of
some arguably procedural sections to pending cases is

undermined by the Supreme Court's analysis of S 107(c) and S 2264(b). The Court could not assert that none of the chapter 153 amendments have retroactive effect when

S 2264(b) expressly allows for an exception. We conclude that the most plausible reading of the Court's language is that the amendments to chapter 153 should not be given retroactive effect unless expressly provided for elsewhere in the text of the Act, and that that reading is most consistent with the tenor and analysis of the Lindh.

Thus, since S 2253(c) is part of chapter 153, we hold that that section should not apply to a S 2255 motion that was filed before AEDPA's effective date. Because we dispose of this case on the grounds of Congressional intent, as the Supreme Court itself has found it, we need not address the matters that would be predicate to determining applicability of the default rules.

Nor are we persuaded that the filing of a notice of appeal after AEDPA's effective date institutes a new proceeding such that we could find that Skandier's case was not pending on April 24, 1996, and thus that the new S 2253(c) should apply. Rather, we believe that the better view for present purposes is that there is but one case, which commences with the filing of the petition or motion and continues through the appellate process. Thus, so long as the S 2255 motion was filed before April 24, 1996, there was a case pending on that date even if the notice of appeal was filed after that date. At all events, we are controlled by Lindh, and our decision here is compelled by the Court's reasoning in that case.

We conclude, then, that because Skandier's S 2255 motion was filed before April 24, 1996, S 2253(c) as amended by AEDPA does not apply to his appeal from the denial of that motion, and that he should not have been required to obtain a certificate of appealability before his appeal proceeded to consideration on the merits.

III

In the present case, we address this issue not in the context of a request for a certificate of appealability but, after such a request and a subsequent petition for rehearing had been denied, in the context of a motion to recall the mandate and for rehearing. We must also decide,

therefore, whether this is a situation in which the mandate should be recalled.

In American Iron & Steel Institute v. E.P.A., 560 F.2d 589, 594 (3d Cir. 1977), cert. denied, 435 U.S. 914 (1978), we joined other courts of appeals and held that we have the authority to recall a mandate. We concluded that while a decision to recall a mandate is discretionary, it is an extraordinary remedy to be used only in unusual circumstances to prevent injustice or otherwise for good cause. Id. We also noted that courts have listed five types of situation which would justify recalling a mandate, one of which is where a subsequent Supreme Court decision has shown that the original judgment was wrong. Id.

We believe that the circumstances of the present case warrant the recall of the mandate. The AEDPA is not a model of the legislative drafter's art. Rather, as the Supreme Court has noted, "in a world of silk purses and pigs' ears, the Act is not a silk purse of the art of statutory drafting." Lindh, 117 S.Ct. at 2068. One result has been the uncertainty concerning the applicability of the AEDPA to habeas petitions filed before April 24, 1996. For the reasons given above, we believe that Lindh has clarified the matter, discerning a Congressional intent not to allow the application of the chapter 153 amendments to pending cases unless specifically provided for elsewhere in the Act. To that extent, this case falls within the criterion listed above. Accordingly, Skandier's motion must be granted.

IV

For the foregoing reasons, the mandate will be recalled and this Court's order dated May 27, 1997, denying Skandier's request for a certificate of appealability will be vacated.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit